Smith *v.* Creveling et al., Appellants.

Argued December 12, 1933.

Before Trexler, P. J., Kel-
ler, Cunningham, Baldrige, Stadtfeld, Parker and
James, JJ.

*C. T. Woodring,* and with him *Francis E. Walter,*
for appellant.

*T. McK. Chidsey* of *Chidsey, Maxwell & Frack,* for
appellee.

Opinion by Cunningham, J., February 1, 1934:

The appeal in this workmen's compensation case
is by the employer and his insurance carrier from an
order, entered July 3, 1933, by the court below, dis-
missing their petition to terminate a compensation
agreement and directing them to resume payments to
the claimant for total disability.

Lloyd D. Smith, the claimant, suffered an accident
on April 25, 1929, during the course of his employ-

ment with John F. Creveling, an electrical contractor and frigidaire dealer, through which he was totally disabled. Compensation agreement, No. 2,482,802, was executed by the parties and approved by the board; the accident and resulting injury were thus described: "Was delivering a frigidaire and lifting it up steps, felt something give in his back followed by severe pain." The payments of $15 per week, provided for in the agreement, were made up to May 12, 1932, when the petition to terminate, involved under this appeal, was filed. Appellants made a previous unsuccessful effort to have the agreement terminated by filing a petition therefor on April 10, 1930. Two hearings, one on March 12, and the other on October 6, 1931, were had before a referee upon this petition, at which considerable medical testimony was taken on each side. This proceeding terminated in a finding by the referee, dated October 16, 1931, and affirmed by the board on March 5, 1932, dismissing the petition and directing that payments be continued, because appellants had not shown that claimant's disability had ceased, or decreased. No appeal was taken from this action of the board and we are not now concerned therewith, except as the testimony then taken may be material to the proceedings about to be referred to and out of which this appeal arose.

Within three months after their first petition to terminate had been dismissed, appellants filed, on May 13, 1932, a second petition for termination, in which they stated compensation had been paid up to that date and averred claimant had fully recovered from the injuries sustained on April 25, 1929, and was able to resume his regular work. Claimant answered he was still totally disabled as the result of the accident.

On December 15, 1932, a hearing was had upon this petition before Referee Eaches, at Philadelphia, at which additional medical and lay testimony was taken.

On December 24, 1932, the referee filed his findings of fact, the third of which reads:

"(3) We find that claimant was fully recovered from the effects of his accidental injury. That this complete recovery was evident on May 7, 1932, when there remained no evident pathology of his accidental injury. The sole apparent pathology is that of a congenital defect known as a spina bifida occulta, which is a cleft of the spinous process of the first sacral segment and in no manner was caused nor aggravated by claimant's accident ......" The referee's conclusion of law was that the agreement be terminated as of May 12, 1932.

Upon claimant's appeal to the board, Chairman Dale filed an opinion, under date of March 8, 1933, in which he said, inter alia, "The testimony offered by the respective parties, ...... is irreconcilably conflicting. We have examined this testimony with care, in conjunction with the entire record, and conclude therefrom that the period of disability extended to the date of the hearing before the referee [December 15, 1932]." The board then set aside the findings of fact, conclusions of law, and order of the referee, and substituted, in lieu of the third finding of the referee, its own finding, reading:

"3. On April 25, 1929, the claimant sustained accidental injury while in the employ of the defendant while lifting a heavy frigidaire, in the nature of a left sacroiliac sprain or relaxation of the left sacroiliac joint, superimposed upon an anatomically weak back, causing him to be totally disabled from the date thereof to December 15, 1932."

The board concluded, as matter of law, that claimant was entitled to compensation "for the period of his disability designated [in the finding]," and appellants were directed to make payments, beginning May 12th and terminating "as of December 15, 1932." The difficulty with this case begins with this finding of fact

by the board to the effect that claimant was totally disabled on May 12, but that his disability had totally ceased by December 15, 1932. Upon an examination of all the testimony upon this record we are unable to find any evidence supporting such a finding; nor is there any evidence of a change in disability between those dates.

. There is evidence of examinations of claimant by appellants' witnesses, Doctors Kurtz and Davidson, on May 2, 7, and 11, 1932; these witnesses expressed their positive opinions that he then had no disability which could be attributed to any injury and was entirely able to resume his employment. Both testified that his only abnormality in the region of the alleged injury was a congenital one, referred to by the referee, and described by Dr. Kurtz, as "a congenital nonfusion of the spinous process of the first sacral vertebra."

In behalf of claimant, there was the opposing testimony and opinions of Doctors Carnett and Jepson, based upon examinations made on June 30, and December 13, 1932, that claimant's disability had not decreased to an extent sufficient to enable him to do any work requiring labor or heavy lifting. As we understand Dr. Carnett's testimony, he, too, found claimant had certain deformities—"pelvic bone on his left was three-eights of an inch lower than the normal right ...... also a scoliosis ...... the spine instead of being perfectly straight takes the form of an 'S'." A sentence from the testimony of this witness reads: "My theory as to what happened at that time was that here was a man that was predisposed to undue injury from a given accident and exposed to prolonged disability from it because of his hollow back and his crooked back and his short leg."

There was, therefore, competent evidence supporting the finding of the referee that disability ceased in

the early part of May, 1932; he had a right to weigh the testimony and accept that of Doctors Kurtz and Davidson. If the board in the exercise of its functions believed the testimony of Doctors Carnett and Jepson was more convincing and entitled to greater weight than that of Doctors Kurtz and Davidson, it had the power to reject the findings of the referee and substitute its own; but if the board accepted the testimony of Doctors Carnett and Jepson, the only logical finding therefrom would seem to be that claimant's disability was still total on December 15th. The order terminating payments as of that date was purely arbitrary and unsupported by any evidence. If the board was unable to reach a satisfactory conclusion as between the conflicting opinions of the medical experts, it was its duty, under section 420 of the amendatory act of June 26, 1919, P. L. 642, 663, to appoint one or more impartial physicians or surgeons to examine claimant and have them examined and cross-examined at a subsequent hearing. The issue under the petition and answer was entirely one of fact and it was the duty of the board to make specific findings, based upon competent evidence, with respect to that issue.

Although the board made no specific disposition of the petition, its order had the effect of terminating the agreement as of December 15, 1932.

Upon claimant's appeal to the court below, that tribunal—pointing out the inconsistency of the board in finding as a fact that claimant's total disability continued until December 15th and then concluding as a matter of law that the agreement should be terminated as of that date—sustained claimant's exceptions, reversed the action of the board, and ordered appellants to resume payments under the agreement. The real difficulty with which the court below was confronted was the failure of the board to make specific findings of fact, based upon the testimony of one side

or the other, or to appoint its own experts and have such further hearing as would enable it to make proper findings. In our opinion, the record should have been remitted to the board, under section 427, for specific findings upon the question: Had claimant any disability, attributable to the injury of April 25, 1929, subsequent to May 12, 1932, and, if so, what, if any, changes have occurred therein?

Upon the return of the record with findings upon these controlling issues, any questions of law then arising, will be for the consideration of the court in disposing of the appeal which will be still pending therein.

The order of July 3, 1933, is reversed and the record remitted to the court below for further proceedings not inconsistent with this opinion.